IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMEL MONROE,

                    Plaintiff,

                                        Civil Action No.
                                        9:06-CV-1133 (GLS/DEP)

      vs.

KENNETH PERLMAN, Superintendent,
Mid-State Correctional Facility and CHRIS
BULSON, Deputy Superintendent Administration

                    Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

JAMEL MONROE, *Pro Se*
c/o Derrick James
268 Beach 17th Street
Fair Rockaway, NY 11691

FOR DEFENDANTS:

HON. ANDREW M. CUOMO              HEATHER RUBINSTEIN, ESQ.
Office of Attorney General              Assistant Attorney General
615 Erie Blvd. West, Suite 102
Syracuse, New York 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Jamel Monroe, a former New York State prison inmate who

is no stranger to this court, has commenced this action pursuant to 42

U.S.C. § 1983 against the superintendent and deputy superintendent of

the prison facility in which he was housed at the relevant times, sued both

individually and in their official capacities, alleging deprivations of his civil

rights.[1]  Plaintiff's claims, which are recited in largely conclusory fashion,

include, *inter alia*, causes of action for unlawful retaliation, cruel and

unusual punishment, and the denial of equal protection.  As relief, plaintiff

seeks recovery of compensatory and punitive damages totaling $5 million.

Currently pending before the court in connection with this action is a

motion by the defendants seeking the entry of summary judgment on

several grounds.  In support of their motion, defendants assert that

plaintiff's claims are procedurally barred by virtue of his failure to properly

exhaust available administrative remedies with respect to his claims

against the named defendants in this action, and that in any event his

---

[1]      In addition to this action, plaintiff has filed six other suits in this court, including *Monroe v. Drown,* No. 6:97-CV-314 (TJM/DRH) (N.D.N.Y., filed Mar. 10, 1997); *Monroe v. Critelli*, No. 9:05-CV-1590 (FJS/GHL) (N.D.N.Y., filed Dec. 22, 2005); *Monroe v. Mullen,* No. 9:06-CV-144 (LEK/DEP) (N.D.N.Y., filed Feb. 2, 2006); *Monroe v. Janes,* No. 9:06-CV-859 (FJS/DEP) (N.D.N.Y., filed July 14, 2006); Monroe v. Walrath, No. 9:06-CV-976 (GLS/RFT) (N.D.N.Y., filed Aug. 11, 2006); and *Monroe v. Spitzer,* No.  9:06-CV-1028 (LEK/DRH) (N.D.N.Y., filed Aug. 25, 2006).  Plaintiff's complaint in one of those actions, *Monroe v. Janes,* asserted claims arising out of the same events as those forming the underpinnings of the present action.

claims are lacking in merit.  Defendants' motion is unopposed, plaintiff

having failed to file papers in opposition to that application.

Having carefully reviewed the record now before the court, which at

minimum reflects the existence of a genuine issue of material fact as to

the sufficiency of plaintiff's efforts to file and pursue a grievance

concerning the matters now at issue through the internal grievance

process, I do not recommend dismissal of plaintiff's claims on this basis.

Because no reasonable factfinder could find in plaintiff's favor of any of his

claims, however, I therefore recommend that defendants' motion for

summary judgment be granted and that plaintiff's complaint be dismissed

in its entirety on the merits.

I.    BACKGROUND[2]

At the times relevant to his claims the plaintiff, who in May of 2007

was released on parole, was a prison inmate entrusted to the custody of

the New York State Department of Correctional Services (the "DOCS")

and designated to the Mid-State Correctional Facility ("Mid-State"),

---

[2]    In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

located in Marcy, New York.[3]  *See generally* Plaintiff's Complaint (Dkt. No. 1).  On June 22, 2006, plaintiff's cube at Mid-State was searched, and documents suspected of constituting contraband were confiscated.  *Id.*  ¶ 2.  The discovery of those materials resulted in the issuance of a misbehavior report on June 29, 2006 by Corrections Lieutenant G. Lawrence accusing Monroe of violating prison correspondence procedures (Rule 180.11).  *Id.*; *see also* Rubinstein Aff.  (Dkt. No. 18-2) Exh. B.  Following the issuance of that disciplinary charge, plaintiff was taken to the facility's special housing unit ("SHU"), designated by him as "the box", and placed there on keeplock status.[4]  Complaint (Dkt. No. 1) ¶ 2.

Beginning on or about July 7, 2006, a Tier III disciplinary hearing was conducted by defendant Chris Bulson, the Deputy Superintendent for

---

[3]     Information regarding plaintiff's status as a former inmate was obtained from publically available information set forth on the DOCS website.  *See* New York State Department of Correctional Services, http://www.docs.state.ny.us.

[4]     Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp.2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp.2d 615, 628 (S.D.N.Y. 1998).  While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.*

4

Administration at Mid-State, to address the charges lodged against

Monroe.[5,6]  Complaint (Dkt. No. 1) ¶ 3; Rubinstein Aff. (Dkt. No. 18-4) Exh.

C.  At the close of that hearing plaintiff was found guilty of the single

charge set forth in the misbehavior report, and a penalty of ninety days of

confinement in the facility SHU, with a corresponding loss of commissary,

packages, and telephone privileges, was imposed.  *Id.*  Complaint (Dkt.

No. 1) ¶¶ 4-6; Rubinstein Aff. (Dkt. No. 18-4) Exh. C.  That determination

was ultimately reversed on appeal to Keith F. DuBray, who at the time

was the acting DOCS Director of Special Housing/Inmate Discipline,

based upon the hearing officer's failure to interview the reporting

employee in order to substantiate the charge, and plaintiff's records were

expunged of all references to the matter.  Rubinstein Aff. (Dkt. No. 18-4)

---

[5]        The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[6]        There is a slight discrepancy regarding the date upon which that hearing was convened.  In the hearing disposition form, it is noted that the hearing commenced on July 3, 2006. *See* Rubenstein Aff. (Dkt. No. 18-4) Exh. C. Plaintiff's complaint, however, alleges that it did not begin until July 7, 2006. Complaint (Dkt. No. 1) ¶ 3. This discrepancy is not material to plaintiff's claims, and thus is not necessary that it be resolved prior to their determination.

Exh. D.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on September 21, 2006.  Dkt. No. 1.

Named as defendants in plaintiff's complaint are Kenneth Perlman, the

Superintendent at Mid-State, and Deputy Superintendent Bulson.  *Id.*

Plaintiff's complaint asserts a single cause of action which reads as

follows:

First Cause of Action

Conspiracy, Retaliation, Harassment, Supervisory
Liability, Official Misconduct, Cruel and Unusual
Punishment, Deliberate Indifference, Racial and
Class Discrimination, – against Defendants
Perlman and Bulson, in violation of Plaintiffs' [sic]
First, Fourth, fifth, Eighth, and fourteenth
Amendment Rights.

Complaint (Dkt. No. 1) First Cause Of Action.  Issue was joined by the

filing of an answer on behalf of the defendants on March 28, 2007,

generally denying plaintiff's constitutional claims and asserting various

affirmative defenses, including failure to exhaust available administrative

remedies as required under 42 U.S.C. § 1997e(a).  Dkt. No. 12.

On April 28, 2008, defendants moved seeking the entry of summary

judgment dismissing plaintiff's claims.  Dkt. No. 18.  In their motion

defendants assert that 1) plaintiff's claims against them in their official capacities are precluded by the Eleventh Amendment; 2) plaintiff's claims are procedurally barred, based upon his failure to file and pursue to completion a grievance naming the defendants in this action and addressing the matters set forth in his complaint; 3) plaintiff's retaliation claim lacks merit; 4) plaintiff has failed to demonstrate the requisite degree of personal involvement on the part of the two named defendants in the civil rights violations alleged; 5) plaintiff's conspiracy claims are lacking in merit; and 6) plaintiff's claims of cruel and unusual punishment and equal protection deprivation are impermissibly stated in conclusory fashion and lacking in support from the record. *Id.* Defendants' motion, to which plaintiff has not responded, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. 72(b).

III.   DISCUSSION

A.   Plaintiff's Failure to Oppose Defendants' Motion

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose

defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal of plaintiff's complaint, based upon their motion.[7]

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3). Undeniably, *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions. *See Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.). Despite this measure of deference, the failure of an unrepresented plaintiff to oppose a summary judgment motion does not preclude the court from deciding the motion. *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980

---

[7]     Included among the papers served upon the plaintiff in connection with defendants' motion was a notice pursuant to Northern District of New York Local Rule 56.2 advising him of the potential consequences of not properly opposing the motion. *See* Dkt. No. 18-6.

F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc*., 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2001) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[8]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug.

---

[8]      According to Local Rule 7.1(a)(3), "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3).

22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

    B.    <u>Summary Judgment Standard</u>

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under

the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

C.    Dismissal of Plaintiff's Claims Against the Defendants in their Official Capacities

In his complaint, plaintiff seeks recovery of damages in substantial amounts against the two defendants, who are sued both as individuals and in their official capacities as DOCS employees.  In their motion, defendants contend that any recovery against them for damages as DOCS employees is precluded by virtue of the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in

federal court by citizens of that state, regardless of the nature of the relief

sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58

(1978).  This absolute immunity which states enjoy under the Eleventh

Amendment extends to both state agencies and state officials sued for

damages in their official capacities, when the essence of the claim

involved is one against a state as the real party in interest.[9]  *Richards v.*

*State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689,

691 (E.D.N.Y. 1984), (citing *Cory v. White,* 457 U.S. 85, 89-91 102 S. Ct.

2325, 2328-2329 (1982)).  "To the extent that a state official is sued for

damages in his official capacity . . . the official is entitled to invoke the

Eleventh Amendment immunity belonging to the state."[10]  *Hafer v. Melo*,

502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473

U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Because plaintiff's damage claims against the defendants in their

---

[9]      In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State.  As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

[10]      By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S. Ct. 358, 364-65 (1991).

official capacities are clearly barred by the Eleventh Amendment, I recommend dismissal of those claims as a matter of law.  *See Daisernia v. State of New York,* 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).

_____D.   Failure to Exhaust

_____As a procedural matter, defendants contend that plaintiff is precluded from judicial pursuit of his claims based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).  While acknowledging that plaintiff did file a grievance generally addressing the misbehavior report and ensuing disciplinary action, they maintain that because the grievance failed to name the defendants in this case it does not suffice to meet the applicable exhaustion requirements.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion

of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see also Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion

requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 549 U.S. at 211, 127 S. Ct. at 918-19.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[11] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief

---

[11]    The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

In this instance, plaintiff filed a grievance growing out of the cell search and ensuing misbehavior report.  *See* Rubinstein Aff. (Dkt. No. 18-4) Exh. E.  That grievance was pursued through to an appeal to the CORC.  *Id.*; *see also* Complaint (Dkt. No. 1) ¶ 5.  While plaintiff's complaint suggests that as of September 21, 2006, the date upon which this action was commenced, his appeal to the CORC from the denial of the grievance was still pending, *see* Complaint (Dkt. No. 1) ¶ 5 – a circumstance which, if true, would preclude his pursuit of this action, *see Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002)  – it appears the CORC in fact rendered its decision denying plaintiff's appeal on September 9, 2006.  *See* Rubinstein Aff. (Dkt. No. 18-4) Exh. F.

Defendants do not deny that plaintiff fully pursued his grievance to the CORC, but instead argue that plaintiff has not fully exhausted his administrative remedies because his grievance did not specifically identify them by name.  This argument lacks merit as it overlooks both the fact that Superintendent Perlman is named in plaintiff's grievance, and case

law which firmly establishes that this alone does not necessarily provide a basis to conclude that a claim is unexhausted.  *See Brownell v. Krom*, 446 F.3d 305, 311 n.1 (2d Cir. 2006).

Having carefully examined the exhaustion issue in light of defendants' arguments, I cannot find as a matter of law that plaintiff has failed to fully exhaust available administrative remedies prior to filing this action.  At best, drawing all inferences in plaintiff's favor, there is a triable issue as to whether plaintiff's grievance provided the requisite notice of the conduct at issue to the defendants.  *See Brownwell*, 446 F.3d at 310-11.  Accordingly, I recommend against dismissal of plaintiff's complaint on this basis.

### E.    Merits of Plaintiff's Retaliation Claim

At the heart of plaintiff's complaint is a claim that out of retaliation for having filed grievances and a legal action in the New York Court of Claims, defendants and others at Mid-State engaged in retaliation against him.  In their motion, defendants contend that plaintiff's retaliation claims are lacking in merit.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the

Constitution, including the free speech provisions of the First Amendment,

a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v.*

*Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has

repeatedly cautioned, however, such claims are easily incanted and

inmates often attribute adverse action, including the issuance of

misbehavior reports, to retaliatory animus; courts must therefore approach

such claims "with skepticism and particular care."  *Dawes v. Walker*, 239

F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13

(2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,*

534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

     In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

establishing that 1) the conduct at issue was protected; 2) the defendants

took adverse action against the plaintiff; and 3) there was a causal

connection between the protected activity and the adverse action – in

other words, that the protected conduct was a "substantial or motivating

factor" in the prison officials' decision to take action against the plaintiff.

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287,

97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.

2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and any evidence tending to link the two.  When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims.  *Flaherty*, 713 F.2d at 13.

It should also be noted that personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an

award of damages against that individual under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).   As is true of other types of claims, this principle applies with equal force to causes of action claiming unlawful retaliation.  *See Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

Undeniably plaintiff has alleged, and defendants do not dispute, that he engaged in protected activity in the form of filing grievances and law suits.  Aside from plaintiff's bold statement regarding adverse action and the connection between the two, however, the record is lacking in any evidence from which a reasonable factfinder could conclude that any adverse action taken against Monroe was motivated by his protected activity.  In light of plaintiff's failure, in the face of defendants' motion, to

adduce evidence from which a reasonable factfinder could make that connection, defendants are entitled to the entry of judgment as a matter of law dismissing plaintiff's retaliation claim.  *Shah v. Consol. Edison Co. of N.Y.*, 175 Fed. App'x 436, 437-38 (2d Cir. 2006).

> F.   Merits of Plaintiff's Conspiracy Claims

In equally vague and uncertain terms, plaintiff's complaint also alleges the existence of a conspiracy to violate his civil rights.  In their motion, defendants maintain that plaintiff's conspiracy claim is lacking in merit.

To prevail on a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must establish 1) an agreement between two or more parties; 2) to act in concert to cause a constitutional deprivation; and 3) an overt act committed in furtherance of that goal, causing damage to the plaintiff. *Franzon v. Massena Mem'l Hosp.*, 89 F. Supp. 2d 270, 274 (N.D.N.Y. Mar. 23, 2000) (McAvoy, C.J.) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  A plaintiff asserting a claim of conspiracy need not necessarily offer proof of an explicit agreement; the existence of a conspiracy can in the alternative be proven circumstantially, through a showing that the parties had a "tacit understanding to carry out the

prohibited conduct." *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)).

In this action plaintiff's claims are stated in only conclusory terms, wholly unsubstantiated by factual assertions.  It is doubtful that plaintiff's conspiracy claims are even pleaded with sufficient specificity to avoid dismissal for failure to state a cause of action upon which relief may be granted; in order to properly plead such a claim, a plaintiff must make more than "conclusory, vague, or general allegations of conspiracy." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam), *cert. denied*, 464 U.S. 857, 104 S. Ct. 117 (1983); *see also Williams v. Riley,* 743 F. Supp. 168, 173 (S.D.N.Y. 1990) ("[u]nsubstantiated, conclusory, vague or general allegations of a conspiracy to deprive constitutional rights are not enough to survive [even] a motion to dismiss").  "[D]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Neither plaintiff's complaint nor the record before the court provides

the identity of the parties to the alleged conspiracy, a showing of

agreement or a "meeting of the minds", or any details as to the time and

place of conspiracy or its objective.  Such deficiencies are fatal to

plaintiff's conspiracy claim.  *See Warren v. Fischl,* 33 F. Supp. 2d 171,

177-78 (E.D.N.Y. 1999).  Because plaintiff has asserted claims of

conspiracy in only vague and conclusory terms, and, in the face of

defendants' summary judgment motion, has failed to come forward with

evidence to support such a cause of action, I recommend its dismissal as

a matter of law.[12]  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert.*

*denied*, 499 U.S. 937, 111 S. Ct. 1399 (1991); *Barr v. Abrams*, 810 F.2d

358, 362-63 (2d Cir. 1987).

    G.    Merits of Plaintiff's Claims Regarding Cruel and Unusual
              Punishment and Denial of Equal Protection

    Once again in purely conclusory fashion, without so much as a

single fact asserted to support such a claim, plaintiff contends that

---

    [12]    Even if plaintiff were able to demonstrate a basis upon which a
reasonable factfinder could conclude the existence of a conspiracy to violate his civil
rights, such a claim would likely be barred by the intra-corporate conspiracy doctrine,
which provides, with exceptions not  now presented, that employees of an entity acting
within the scope of their employment conceptually cannot conspire among themselves
to deprive a party of civil rights.  *Medina v. Hunt*, No. 9:05-CV-1460, 2008 WL
4426748, at *7 (N.D.N.Y. Sept. 25, 2008) (Hurd, J.); *Griffin-Nolan v. Providence
Washington Ins. Co.*, No. 5:05-CV-1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June
20, 2005) (Scullin, C.J.);  *see also Little v. City of New York,* 487 F. Supp.2d 426, 441-
42 (S.D.N.Y. 2007) (citations omitted).

defendants acted to deny him equal protection, and to subject him to cruel and unusual punishment.  Defendants seek dismissal of these claims based upon the paucity of evidence offered to support them.

In his complaint, plaintiff claims that he was discriminated against and denied the benefits of equal protection, intimating that the deprivation was based upon his race.  Beyond this sheer surmise, however, plaintiff's complaint contains no specifics, nor does the record provide any amplification regarding that claim.  Absent such specifics I conclude that no reasonable factfinder could find that plaintiff was discriminated against on the basis of a suspect class or otherwise subject to invidious discrimination and therefore recommend dismissal of his equal protection claims.  *See Jackson v. Burke*, 256 F.3d 93, 96-97 (2d Cir. 2001).

The basis for plaintiff's cruel and unusual punishment claim is equally mystifying.  It appears that plaintiff may be contending that subjecting him to ninety days of disciplinary confinement in the facility's SHU represents cruel and unusual punishment.  It is well established, however, that subjecting a prisoner to the ordinary incidents of SHU disciplinary confinement alone does not rise to a level which is intolerable to the Eighth Amendment's cruel and unusual punishment protections.

*See Anderson v. Coughlin*, 787 F.2d 33, 34-35 (2d Cir. 1985).  I therefore similarly recommend dismissal of plaintiff's cruel and unusual punishment claim concluding that no reasonable factfinder could find in his favor with respect to that claim.

IV.    SUMMARY AND CONCLUSION

Plaintiff's complaint, which is extremely concise and largely devoid of specifics, sets forth an array of constitutional claims asserted in the barest of conclusory terms, without further illumination.  While plaintiff appears to have fully exhausted available administrative remedies prior to commencing this suit, and at best triable issues of fact exist as to whether plaintiff's exhaustion efforts were sufficient to meet the requirements of the PLRA, and I therefore recommend against dismissal of plaintiff's complaints on this procedural basis, based upon the record now before the court I am firmly convinced that no reasonable factfinder could find in plaintiff's favor on any of his various claims.  Accordingly, the defendants are entitled to summary judgment dismissing plaintiff's claims against them as a matter of law.  It is therefore hereby respectfully

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 18) dismissing plaintiff's complaint be GRANTED, and that

plaintiff's claims in this action be DISMISSED in their entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      December 18, 2008
               Syracuse, NY